**In re WELLS FARGO BANK MINNE-SOTA N.A., as Trustee and Orix Capital Markets, LLC, Relators**

No. 14–03–00191–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 10, 2003.

602

Jeff Joyce, Paul V. Simon, Houston, for relator.

Jodi Masera, Matt E. Rubin, Houston, for respondent.

Panel consists of Justices ANDERSON, SEYMORE, and GUZMAN.

## OPINION

ANDERSON, Justice.

Relators, Wells Fargo Bank Minnesota N.A., as Trustee and Orix Capital Markets, LLC, seek a writ of mandamus ordering respondent, the Honorable Joseph Halbach, to enforce the parties' contractual jury waivers in the underlying suit. We conditionally grant the writ.

1. The note and guaranty were executed in connection with a commercial loan secured by an apartment complex in Louisiana. Relators are the trustee and servicer of a trust to which the note and guaranty were eventually assigned.

2. The note provides that it "shall be interpreted, construed and enforced according to the

## I. BACKGROUND

Relators filed the underlying suit against Real Parties in Interest—Cyrus II Partnership, Bahar Development, Inc., and Mondona Rafizadeh—to recover on a $6.4 million mortgage note and guaranty.[1] Real Parties filed a counterclaim alleging bad faith, breach of contract, wrongful acceleration and foreclosure, abuse of rights, and tortious interference with contract, and seeking at least $350 million in damages.

The mortgage note was signed as follows:

> CYRUS II PARTNERSHIP,
> a Louisiana partnership in commendam
> By: Bahar Development, Inc.
> a Texas corporation,
> its general partner
> By: [signature]
> Name: Mondona Rafizadeh
> Title: President

Rafizadeh also individually signed the guaranty. The note and guaranty contain Louisiana choice of law provisions.[2] In addition, both the note and guaranty contain jury waiver provisions. Specifically, the note provides

> **MAKER HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO**

laws of the State of Louisiana without giving effect to the conflicts of law provisions thereof." Similarly, the guaranty provides that it "shall be governed by and construed in accordance with the laws of the State of Louisiana and the applicable laws of the United States of America."

THIS NOTE, THE MORTGAGE [DEED OF TRUST] AND THE OTHER SECURITY DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY MAKER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. PAYEE IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY MAKER.

The guaranty contains a similar provision:

5.13 **Waiver of Right to Trial by Jury.** GUARANTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY, THE NOTE, THE MORTGAGE, OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY GUARANTOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY GUARANTOR.

Despite these jury waivers, Real Parties filed a jury demand and paid the fee, and the suit was placed on the jury docket. Relators filed a motion to enforce the contractual jury waivers. After a hearing on February 7, 2003, the trial court orally denied the motion. On February 19, 2003, the trial court signed an order denying the motion. Relators then filed this petition for mandamus relief.

## II. STANDARD OF REVIEW

Mandamus relief is available if the trial court clearly abuses its discretion, either in resolving factual issues or determining legal principles, and there is no other adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* at 839. To show abuse of discretion in resolving factual issues, Relators must show the trial court could reasonably have reached only one decision. *Id.* at 839–40. To show abuse of discretion in determining legal principles, Relators must show the trial court clearly failed to analyze or apply the law correctly. *Id.* at 840. A trial court has no "discretion" in determining what the law is or applying the law to the facts. *Id.* Further, a court must construe an unambiguous contract as a matter of law. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983); *Mobil Exploration and Producing U.S., Inc. v. Dover Energy Exploration, L.L.C.*, 56 S.W.3d 772, 776 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Finally, Relators must also show they have no other adequate remedy. *Walker*, 827 S.W.2d at 840.

## III. ABUSE OF DISCRETION

■ This mandamus petition presents an issue of first impression in Texas. The parties do not cite, and we have not found, a Texas case addressing the enforceability of contractual jury waivers.[3] Nevertheless, in their sole issue, Relators contend the trial court abused its discretion by refusing to enforce these unambiguous jury waivers.[4] In response, Real Parties dispute the enforceability of contractual jury waivers in general and these waivers in particular.

## A. IS THERE A CONFLICT BETWEEN LOUISIANA AND TEXAS LAW ON ENFORCEABILITY OF CONTRACTUAL JURY WAIVERS?

■ The parties disagree over what law applies to the issue of enforceability of contractual jury waivers. Relators contend Louisiana law, as chosen by the parties, governs this issue, and Louisiana enforces contractual jury waivers. Real Parties do not dispute that the parties chose Louisiana law in their contracts. However, they contend contractual jury waivers should be unenforceable *per se* in Texas because Texas constitutionally guarantees[5] the right to a jury trial while Louisiana does not.[6] They ask us to apply the choice of law principles set forth in section 187 of the Restatement of Conflicts of Laws and find Louisiana law inapplicable to this dispute. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971); *see also DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990) (adopting section 187).[7]

---

3. The only Texas case concerning a contractual jury waiver is *Rivercenter Associates v. Rivera*, 858 S.W.2d 366 (Tex.1993). However, the court did not address the enforceability or constitutionality of the waiver because it found the relator waived enforcement by waiting too long to file its motion to quash the jury demand. *Id.* at 367–68.

4. A trial court's erroneous legal conclusion, even in an unsettled area of law, is an abuse of discretion. *See Huie v. DeShazo*, 922 S.W.2d 920, 927–28 (Tex.1996); *Lozano v. Lozano*, 975 S.W.2d 63, 66 (Tex.App.—Houston [14th Dist.] 1998, pet. denied).

5. Real Parties cite TEX. CONST. Art. I, § 15 ("The right of trial by jury shall remain inviolate."), and TEX. CONST. Art. V, § 10(granting right to jury trial in District Courts).

6. Louisiana does not constitutionally guarantee the right to a jury trial in civil cases, *see Kimball v. Allstate Ins. Co.*, 712 So.2d 46, 60 (La.1998), although it statutorily guarantees the right in many instances. *See* LA. CODE CIV. PROC. ANN. art. 1731–1736 (West 2003).

7. Where the parties contractually choose the law of a state other than the forum state, matters of remedy and procedure are nonetheless governed by the law of the forum state. *See Owens–Corning Fiberglas Corp. v. Martin*, 942 S.W.2d 712, 721 (Tex.App.—Dallas 1997, no writ). In particular, whether a party is entitled to a jury trial on a particular claim is typically a procedural issue governed by the law of the forum. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 129 (1971). However, the issue here is not whether Real Parties are entitled to a jury trial on the type of claim alleged. Instead, the issue is the enforceability of the contractual waiver of Real Parties' entitlement to a jury trial. With certain exceptions, issues regarding the validity of a contract and contractual rights and duties are governed by the law of the state chosen by the parties. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971). An exception exists when the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the particular issue, and which under § 188 would be the state of the applicable law in the absence of an effective choice of law provision. *See id.* § 187(2)(b). Real Parties argued to the trial court that enforceability of the jury waivers is a procedural issue governed by Texas law. However, in response to the mandamus petition, they apparently concede that enforceability of the waivers is a substantive, contractual issue, but

We need not engage in a choice of law analysis under section 187 if there is no conflict between Louisiana and Texas law on the disputed issue. *See Fraud-Tech, Inc. v. Choicepoint, Inc.,* 102 S.W.3d 366, 377–78 (Tex.App.—Fort Worth 2003, no pet. h.) (citing *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 419 (Tex.1984) and holding court need not decide which state's law applies if no conflict exists on the issues); *Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.,* 94 S.W.3d 163, 168–69 (Tex.App.—Houston [14th Dist.] 2002, no pet.) (reviewing Texas and Louisiana law on enforceability of indemnity provisions before conducting choice of law analysis because "we need not decide which law applies if it makes no difference."); *Young Refining Corp. v. Pennzoil Co.,* 46 S.W.3d 380, 385 (Tex.App.—Houston [1st Dist.] 2001, pet. denied) (finding choice of law analysis unnecessary absent a conflict of law on the issues presented). Therefore, we will examine the laws of both states on enforceability of contractual jury waivers.

### 1. LOUISIANA ENFORCES CONTRACTUAL JURY WAIVERS.

Louisiana has unequivocally upheld contractual jury waivers. In *Cook v. Hibernia National Bank,* 847 So.2d 617, 2002 WL 31336987 (La.Ct.App. Mar.15, 2002), *writ denied,* 817 So.2d 98 (La.2002), the court upheld the trial court's strike of a jury request where the parties had clearly and specifically waived a jury trial in their contract, and the party opposing the waiver was an experienced businesswoman. Real Parties cite no Louisiana authority holding contrary to *Cook* or otherwise prohibiting enforcement of contractual jury waivers.

### 2. DOES TEXAS PROHIBIT CONTRACTUAL JURY WAIVERS?

As Real Parties contend, the Texas constitution does indeed guarantee the right to a jury trial in a civil case. *See* TEX. CONST. art. I, § 15 ("The right of trial by jury shall remain inviolate."); TEX. CONST. art. V, § 10 (granting right to jury trial in district courts). However, no Texas law prohibits parties from waiving that constitutional right—whether contractually or otherwise.[8] In fact, parties can, and do, frequently waive that right by (a) agreeing to a bench trial, *see Am. Indus. Life Ins. Co. v. Ruvalcaba,* 64 S.W.3d 126, 131 (Tex.App.—Houston [14th Dist.] 2001, pet. denied); (b) failing to timely pay a jury fee, *see* TEX. R. CIV. P. 216; *Higginbotham v. Collateral Prot., Inc.,* 859 S.W.2d 487, 489–90 (Tex.App.—Houston [1st Dist.] 1993, writ denied); (c) failing to

---

they still argue Texas law applies under the choice of law principles of section 187. Specifically, they assert the constitutional right to a jury trial in Texas is so sacred and inviolate that enforcing contractual jury waivers is repugnant to a fundamental Texas policy.

8. The majority of states that have considered contractual jury waivers have concluded they are enforceable if knowing, voluntary, and intentional despite the right to a jury trial contained in their own constitutions. *See generally Lowe Enter. Residential Partners, L.P. v. Eighth Judicial Dist. Court,* 40 P.3d 405, 408–10 (Nev.2002) (upholding contractual jury waivers and discussing numerous other jurisdictions that enforce them); Jay M.

Zitter, *Contractual Jury Trial Waivers in State Civil Cases,* 42 A.L.R.5th 53, 71 (1996) (stating "vast majority" of courts hold, at least in the abstract, that contractual waivers will be enforced). Further, federal courts enforce contractual jury waivers despite the right to a jury trial contained in the Seventh Amendment to the United State Constitution. *See, e.g. Leasing Serv. Corp. v. Crane,* 804 F.2d 828, 832 (4th Cir.1986) ("The seventh amendment right is of course a fundamental one, but it is one that can be knowingly and intentionally waived by contract."); *RDO Fin. Servs. Co. v. Powell,* 191 F.Supp.2d 811, 813 (N.D.Tex. 2002) (rejecting argument that constitutional right to jury trial renders contractual jury waivers invalid).

timely request a jury trial, *see* TEX. R. CIV. P. 216; *Huddle v. Huddle,* 696 S.W.2d 895 (Tex.1985); (d) failing to appear for trial, *see* TEX. R. CIV. P. 220; and (e) failing to object to a bench trial despite a properly perfected jury request, *see Massey v. Galvan,* 822 S.W.2d 309, 318 (Tex.App.—Houston [14th Dist.] 1992, writ denied). In fact, the Texas Constitution implies that the right to a jury trial can be waived by providing "no jury shall be empaneled in any civil case unless demanded by a party to the case, and a jury fee be paid by the party demanding a jury." *See* TEX. CONST. art. V, § 10.

 Although no Texas court has directly addressed the enforceability of contractual jury waivers, Texas allows parties to contractually waive the right to a jury trial by enforcing arbitration agreements. "It is clear that when a party agrees to have a dispute resolved through arbitration rather than judicial proceeding, that party has waived its right to a jury trial." *Massey,* 822 S.W.2d at 318. Although parties agreeing to arbitrate waive

considerably more than just the right to a jury trial, arbitration is strongly favored under Texas law. *See Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 898 (Tex. 1995) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983); *Brazoria County v. Knutson,* 142 Tex. 172, 176 S.W.2d 740, 743 (1943)).[9]

Moreover, Texas has a "strong commitment to the principle of contractual freedom" and its "indispensable partner—contract enforcement." *Chesapeake Operating, Inc.,* 94 S.W.3d at 176 (quoting *Churchill Forge, Inc. v. Brown,* 61 S.W.3d 368, 371 (Tex.2001)); *See also Lawrence v. CDB Servs., Inc.,* 44 S.W.3d 544, 553 (Tex.2001) (stating we have long recognized a strong policy of contractual freedom). Although Real Parties emphasize that the right to a jury trial in Texas is constitutional, they do not cite, and we have not found, any persuasive authority preventing parties from contractually waiving that right.[10] *See Dillee v. Sisters of Charity of Incarnate Word Health*

---

**9.** *See also Telum, Inc. v. E.F. Hutton Credit Corp.,* 859 F.2d 835, 838 (10th Cir.1988) (stating arbitration analogy appropriate because submission to arbitration "involves a greater compromise of procedural protections than does the waiver of the right to trial by jury."); *Chase Commercial Corp. v. Owen,* 32 Mass. App.Ct. 248, 588 N.E.2d 705, 709 (1992) (recognizing contractual jury waivers call for "deprivations less severe than agreements to arbitrate.").

**10.** Instead, Real Parties cite a decision from Georgia-the only state holding pre-litigation contractual jury waivers are *per se* unenforceable. *See Bank South, N.A. v. Howard,* 264 Ga. 339, 444 S.E.2d 799, 800 (1994); *see also RDO Fin. Servs.,* 191 F.Supp.2d at 812 n. 4 (stating Georgia appears to be the only state to find contractual jury waivers unenforceable). The *Bank South* court reasoned that the Georgia constitution and statutes do not provide for jury waivers, Georgia statutes contemplate that litigation must be underway be-

fore a party can waive the right to a jury trial, and jury waivers are analogous to pre-litigation confessions of judgment which are unenforceable. 444 S.E.2d at 800. However, Georgia's position has been criticized. *See, e.g.* Edward Wood Dunham, *Enforcing Contract Terms Designed to Manage Franchisor Risk,* 19 FRANC. L.J. 91, 96 (2000) (characterizing Georgia's approach as extreme and unusual). Further, we find the *Bank South* dissent well-reasoned because it recognized that parties should be free to contract about any subject matter they so desire. *Bank South,* 444 S.E.2d at 801. It also criticized the majority's confession of judgment analogy because a confession of judgment is a substitute for a verdict with a party forfeiting the right to any trial whatsoever. *Id.* Conversely, with a jury waiver, a party forfeits only the right to a jury trial while retaining all other rights to litigate the dispute in a bench trial. *Id.* We decline Real Parties' invitation to apply the rationale of *Bank South.*

*Care Sys.*, 912 S.W.2d 307, 309 (Tex. App.—Houston [14th Dist.] 1995, no writ) (stating constitutional rights may be waived contractually if done so voluntarily, intelligently, and knowingly).[11]

Therefore, we reject Real Parties' reliance on the Texas constitution to create a conflict between Louisiana and Texas law on the enforceability of contractual jury waivers. Because no conflict exists, we need not engage in a choice of law analysis.

## B. ARE THESE PARTICULAR WAIVERS ENFORCEABLE?

We now turn to Real Parties' other reasons for not enforcing these jury waivers under the law of the state chosen by the parties. Real Parties contend the waivers are not enforceable because (1) they are nullities even under Louisiana law; (2) they were not executed by all Real Parties; and (3) they were not knowing and voluntary.

### 1. THE WAIVERS ARE NOT NULLITIES.

Real Parties maintain that even under Louisiana law, these particular contractual jury waivers are "meaningless" nullities. They assert Louisiana does not allow a jury trial in a suit on a promissory note, and, therefore, the parties could not waive a right that did not exist in the first place. *See* LA. CODE CIV. PROC. ANN. art. 1732(2) (providing trial by jury shall not be available in a suit on an unconditional obligation to pay a specific sum of money, unless the defense thereto is forgery, fraud, error, want, or failure of consideration); *Steptore v. Masco Constr. Co.*, 643 So.2d 1213, 1216 (La.1994) (defining waiver

as intentional relinquishment of a known, existing right).

■■■■ However, this argument contradicts Real Parties' entire position in this matter; they cite a rule purportedly negating their right to a jury trial to prove these waivers were meaningless, while maintaining they are entitled to a jury trial. In any event, the right to a jury trial was not necessarily non-existent when the parties executed the waivers. First, article 1732(2) is a Louisiana procedural rule applicable to suits brought in Louisiana.[12] The note and guaranty do not reflect that any future suits could only be brought in Louisiana. Indeed, the underlying suit was brought in Texas where Real Parties would ordinarily be entitled to request a jury trial if not for the waiver. Second, even if this suit were pending in Louisiana, article 1732(2) allows a jury trial when a defendant asserts certain defenses to a suit on a note. *See* LA. CODE CIV. PROC. ANN. art. 1732(2). Here, the parties could not anticipate when they executed the waivers whether one of these defenses might later be asserted. Third, Louisiana allows a jury trial on a compulsory counterclaim even if there is no right to jury trial on the original claim. *See* LA. CODE CIV. PROC. ANN. art. 1731(C). Here, the parties could not anticipate when they executed the waivers whether a compulsory counterclaim might later be asserted. In fact, Real Parties have filed a counterclaim concerning the note. Therefore, the contractual jury waivers were not meaningless at the time they were executed.

---

**11.** Other jurisdictions have recognized contractual freedom as a reason for enforcing contractual jury waivers. *See Lowe,* 40 P.3d at 409–11; *L & R Realty v. Conn. Nat'l. Bank,* 246 Conn. 1, 715 A.2d 748, 755 (1998).

**12.** *See* note 7 above (discussing law of forum state applicable to purely procedural issues).

## 2. ALL REAL PARTIES EXECUTED THE WAIVERS.

 Real Parties also contend the jury waivers are not enforceable because they are not all bound by them. They acknowledge that Cyrus II executed the note with a jury waiver, and Rafizadeh executed the guaranty with a jury waiver. However, they contend Bahar did not execute a waiver because it executed the note only on behalf of Cyrus II as its general partner. We disagree.

The waiver in the note states it is given by "Maker." The note defines "Maker" to include its "legal representatives." Therefore, Bahar is bound by the waiver if it is Cyrus II's legal representative. According to the note, Cyrus II is a Louisiana partnership in commendam (limited partnership), and Bahar is its general partner. *See* LA. CIV. CODE. ANN. arts. 2836–44 (West 1994 and supp.2003) (governing partnerships in commendam).[13] A partnership in commendam must consist of at least one general partner and one partner in commendam (limited partner). *See id.* art. 2837. A general partner has the authority to bind the partnership, participate in the management or administration of the partnership, or to conduct any business with third parties on behalf of the partnership, but a partner in commendam has no such authority. *See id.* art. 2843. As a business entity, it was impossible for Cyrus II to execute the note except through a legal representative. Because only a general partner may bind a partnership, and Bahar was the general partner executing the note on Cyrus II's behalf, it was necessarily Cyrus II's legal representative.

Further, the note provides "[i]f Maker consists of more than one person or party, the obligations and liabilities of each such person or party shall be joint and several." As a partnership, Cyrus II consists of more than one person or party—including Bahar. Therefore, Bahar is jointly and severally bound by Cyrus II's obligations under the note, including the jury waivers.[14]

## 3. REAL PARTIES FAILED TO PROVE THE WAIVERS WERE NOT KNOWING AND VOLUNTARY.

 Real Parties contend these jury waivers are not enforceable because they were not entered into knowingly and voluntarily. However, the jury waivers explicitly state they were given "knowingly and voluntarily" by the maker and guarantor. They further state the payee is "authorized to file a copy of this paragraph in any proceeding as conclusive evidence of this waiver. . . ." Because Relators introduced this conclusive evidence that the waivers were knowing and voluntary, the burden shifted to Real Parties to show they were not knowing and voluntary. *See Emerald Tex., Inc. v. Peel,* 920 S.W.2d 398, 402 (Tex.App.—Houston [1st Dist.] 1996, no pet.) (stating burden was on party opposing enforcement of arbitration agreement to prove it was unconscionable). In view of the presumption the jury waivers were valid, it was incumbent on Real Parties to rebut the presumption. *See Lowe Enter. Residential Partners, L.P. v. Eighth Judicial Dist. Court,* 40 P.3d 405,

---

13. Real Parties apparently do not contest the application of Louisiana law to this issue of whether all parties are bound by the waivers because they cite Louisiana law in support of their position.

14. In addition, Bahar's position is contradictory because it maintains it is not bound by the note for purposes of enforcing the jury waiver, yet it has individually asserted counterclaims including breach of contract as if it were a party to the note; Bahar cannot have it both ways.

410 (Nev.2002) (stating contractual jury waiver is presumptively valid unless the challenging party can prove it was not knowing, voluntary, or intentional).[15]

 Real Parties suggest two reasons the waivers were not knowing and voluntary. First, they claim there was no meaningful negotiation over the waivers because the note and guaranty were standard forms submitted to them on a "take it or leave it" basis. However, Real Parties presented no evidence in the court below supporting this claim. They state they had no time to submit such evidence because Relators' motion was heard on short notice. However, the record reflects no objection by Real Parties to the trial court regarding the lack of sufficient notice and no request for additional time to present such evidence. Therefore, they waived their complaint regarding lack of sufficient notice and failed to meet their burden to prove they had no opportunity to negotiate.[16] *See* TEX. R. APP. P. 33.1.

 Real Parties also contend the jury waivers were not knowing and voluntary because they could not know what claims might accrue in the future. Again, the arbitration analogy refutes this contention. A party that contractually agrees to arbitration, thereby waiving more than just the right to a jury trial, does not necessarily know every claim that might accrue in the future; yet, arbitration agreements are enforceable. *See Prudential Sec. Inc.*, 909 S.W.2d at 898. Moreover, because the waivers provide they cover "each instance and each issue as to which the right to a trial by jury would otherwise accrue," they clearly encompassed any conceivable future claims. Therefore, Real Parties failed to prove these waivers were not knowing and voluntary.

Accordingly, because all Real Parties knowingly and voluntarily executed contracts which contained provisions explicitly waiving the right to a jury trial, the trial court abused its discretion by refusing to

**15.** *See also K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752, 758 (6th Cir.1985) (placing burden to show waiver was not knowing and voluntary on party opposing it); *L & R Realty*, 715 A.2d at 755 (recognizing most information necessary to disprove waiver was knowing and voluntary is likely to be in the hands of party opposing enforcement); *but see Leasing Serv. Corp.*, 804 F.2d at 833 (party seeking enforcement of waiver must prove consent was knowing and intentional); *RDO Fin. Servs.*, 191 F.Supp.2d at 813 (recognizing split among circuits on which party bears the burden of proof but placing burden on party seeking to enforce waiver).

**16.** Other jurisdictions have set forth several factors for determining whether a contractual jury waiver was knowing and voluntary: (1) the parties' negotiations concerning the waiver, if any; (2) the conspicuousness of the provision; (3) the relative bargaining power of the parties; and (4) whether the waiving party's counsel had an opportunity to review the agreement. *See, e.g. Lowe*, 40 P.3d 405,

410–11; *see also RDO Fin. Servs.*, 191 F.Supp.2d 811, 813–14 (applying similar factors). Although Real Parties challenge only the opportunity to negotiate factor, the other factors are established in the record. The waivers are certainly conspicuous; they are boldfaced, all capital letters, and set off in separate paragraphs. *See L & R Realty*, 715 A.2d at 756 (finding waivers conspicuous where boldfaced and located in separate paragraphs). There was equality in bargaining power because Real Parties are business entities and an officer; Rafizadeh testified by deposition that she owns fifteen or sixteen other business entities and owns properties worth in excess of $100 million dollars. *See Leasing Serv. Corp.*, 804 F.2d at 833 (finding no inequality in bargaining positions where parties opposing waiver were manifestly shrewd businessmen who had been conducting the same type of business successfully for sixteen years). Finally, Ravizadeh testified that her attorney reviewed the closing documents for the transaction in question.

enforce the waivers as written and setting this case on the jury docket.

## IV. NO ADEQUATE REMEDY BY APPEAL

■ Having found the trial court abused its discretion by refusing to enforce the contractual jury waivers, we must determine whether Relators have an adequate remedy by appeal. Relators claim they have no adequate remedy by appeal because they will be deprived of the bargain for which they contracted. They cite cases allowing mandamus relief from a trial court's refusal to compel arbitration in accordance with a contractual arbitration agreement. *See In re J.D. Edwards World Solutions, Co.,* 87 S.W.3d 546, 549 (Tex.2002); *Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 272–73 (Tex.1992).

In *Jack B. Anglin Co.,* the court recognized "[a]bsent mandamus relief, [Relator] would be deprived of the benefits of the arbitration clause it contracted for, and the purpose of providing a rapid, inexpensive alternative to traditional litigation would be defeated." 842 S.W.2d at 272–73. Although a bench trial is not an alternative to traditional litigation to the same degree as arbitration, Relators bargained for a less costly and more expeditious resolution than a jury trial. *See Lowe,* 40 P.3d at 408 (citing judicial economy as one reason for enforcing contractual jury waivers); *Chase Commercial Corp. v. Owen,* 32 Mass.App. Ct. 248, 588 N.E.2d 705, 709 (1992) (recognizing waivers offer contracting parties potentially less costly and complicated litigation); *Trizec Prop., Inc. v. Superior Court,* 229 Cal.App.3d 1616, 280 Cal.Rptr. 885, 887 (1991) (recognizing in some commercial transactions, advance assurance that contractual disputes will be resolved expeditiously in a court trial best serves the needs of the contracting parties and the overburdened judicial system). Relators will be completely deprived of this contractual bargain if forced to complete a jury trial before appealing the trial court's refusal to enforce the jury waivers. Therefore, an appeal could not remedy the error in denying Relators their contractual right to a non-jury trial. "Although mandamus relief will not issue merely because an appellate remedy may be more expensive and time-consuming than mandamus, it will issue when the failure to do so would vitiate and render illusory the subject matter of an appeal." *Jack B. Anglin,* 842 S.W.2d at 272.

Further, to obtain reversal on appeal, Relators would have to show that the trial court's refusal to enforce the jury waivers probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1). It would be extremely difficult, if not impossible, for Relators to demonstrate on appeal that a judgment would have been different if trial had been to the bench, thus, rendering the value of the right to appeal illusory.[17]

Accordingly, we conclude Relators have no adequate remedy by appeal from the trial court's refusal to enforce the contractual jury waivers.

## V. CONCLUSION

Having found the trial court abused its discretion by refusing to enforce Relators'

---

17. Some other jurisdictions have found mandamus relief appropriate to enforce contractual jury waivers. *See Lowe,* 40 P.3d at 408; *Trizec Prop.,* 280 Cal.Rptr. at 887. The *Lowe* court concluded its petitioner had no adequate remedy at law because it would face too difficult a burden upon appeal; this burden would be too difficult because Nevada law requires an appellant to show an error substantially affected its rights and, in the absence of such error, the outcome of the case would have been different. *See Lowe,* 40 P.3d at 408.

contractual right to a non-jury trial, and Relators have no adequate remedy by appeal, we sustain Relators' sole issue and conditionally grant Relators' petition for writ of mandamus. We are confident the trial court will vacate its order of February 19, 2003 and will remove the underlying case from the jury docket. If the trial court fails to do so, the writ will issue.